<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES A. SCARPONE, | |
| Plaintiff, | Hon. Stanley R. Chesler, U.S.D.J. |
| v. | Civil Action No. 04-3140 (SRC) |
| LAURA NELSON DIONISIO, et al., | **OPINION** |
| Defendants. | |
| In re: | |
| THOMAS A. DIONISIO, | |
| Debtor. | |

**<u>CHESLER</u>, U.S.D.J.**

This matter comes before the Court on four motions: 1) Plaintiff James A. Scarpone (the "Trustee" or "Scarpone") moves for partial summary judgment, pursuant to FED. R. CIV. P. 56, on Counts One, Three, and Five of the Third Amended Complaint against Defendant George F. Surgent ("Surgent"), and on Surgent's counterclaims; 2) the Trustee moves for partial summary judgment, pursuant to FED. R. CIV. P. 56, on Count Six of the Third Amended Complaint against Surgent; 3) Surgent moves for partial summary judgment, pursuant to FED. R. CIV. P. 56, on Counts One, Three, Five, and Six of the Third Amended Complaint against the Trustee; and 4) the Trustee cross-moves to strike Surgent's motion and for sanctions. For the reasons set forth below, the Trustee's motions will be **GRANTED IN PART** and **DENIED IN PART**, and Surgent's motion will be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This case arises out of a complex set of disputes connected to an underlying bankruptcy proceeding. The Debtor is Thomas Dionisio ("TD"). In the years prior to filing his bankruptcy petition, TD made asset transfers to his wife at the time, Laura Dionisio ("LD"). Surgent served as TD's attorney in various matters. In 2000, TD filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. The Bankruptcy Court initially appointed Scarpone as Chapter 11 Trustee, and then as Chapter 7 Trustee.

The instant case was originally brought in 2001 by the Debtor's counsel as an adversary proceeding in the Bankruptcy Court. On July 2, 2004, the Trustee filed a motion to withdraw the reference in this Court, which was granted on October 19, 2004. The Trustee filed the Third Amended Complaint on January 20, 2005, making claims against Laura Dionisio, the corporation Laura Nelson Properties, Inc. ("LNP"), George Surgent, Giacomo Duva, Fatcar Farms, LLC ("Fatcar"), Victor Fischetti, and Thomas Dionisio. In brief, the Third Amended Complaint alleges that the defendants engaged with TD in various transactions in which his assets were illegally transferred, or that they facilitated such transactions. The motions presently before this Court focus on the liability of Surgent in connection with these transactions.

The parties do not dispute that the relevant transactions may be put into five groups:

1) "Early transfers" to LD of TD's Paine Webber securities account;

2) TD's "April 21, 1999" transfers to LD of beauty salon stock, assignments by gift of three rental and installment payment rights, and the deed to the Marshall Hill Road property;

3) TD's purchase and transfer to Laura Nelson Properties, Inc. of the judgment of foreclosure on Secluded Acres (the "LNP transaction");

    4)      the July 9, 1999 purchase of the Brewster Road condominium (the "Brewster transaction"); and

    5)      LNP's transfer of the judgment of foreclosure to Fatcar (the "Fatcar transaction").

Of the ten counts in the Third Amended Complaint, four are brought against Defendant Surgent:

    Count One:    participation in fraudulent transfer of assets to LD and LNP in violation of N.J.S.A. 25:2-25(a);

    Count Three:    participation in fraudulent transfer of assets to LD and LNP in violation of N.J.S.A. 25:2-25(b)(2);

    Count Five:    conspiracy to defraud; and

    Count Six:    negligent legal representation with regard to the transfer of assets to LD and LNP.

## ANALYSIS

**I.**    **Legal Standards**

    A.    <u>Rule 56 Motion for Summary Judgment</u>

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241,

247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001).

If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## II. The Motions for Partial Summary Judgment

### A. The fraud claims: Counts One, Three, and Five

In Counts One, Three, and Five, the Trustee alleges that Surgent participated in transfers in violation of New Jersey's Uniform Fraudulent Transfer Act ("UFTA"). The relevant UTFA provision states:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J. Stat. Ann. § 25:2-25. Furthermore:

> a creditor in New Jersey may bring a claim against one who assists another in executing a fraudulent transfer. Such an action would require the creditor to prove that the conspirator agreed to perform the fraudulent transfer, which, absent the conspiracy, would give a right of action under the UFTA. A creditor asserting a claim against a conspirator must satisfy the agreement and knowledge aspects of civil conspiracy and all of the underlying components of a UFTA claim.

5

Banco Popular N. Am. v. Gandi, 184 N.J. 161, 178 (N.J. 2005) (citation omitted).

Surgent first moves for summary judgment as to certain of the fraud claims, contending that there is no evidence that Surgent participated in the early transfers, the April 21, 1999 transfers, and the Fatcar transaction. There appears to be no factual dispute about this. While the Trustee contends that Surgent's motion is frivolous, his agreement with Surgent is implicit in this statement that introduces his argument regarding the fraudulent transfers: "The Trustee alleges that the admitted creation of the LNP, transfer of the Sun foreclosure to LNP and the purchase of the townhouse solely under Laura Dionisio's name violate the Uniform Fraudulent Transfer Act." (Trustee's Opp. to Surgent's MSJ Br. 16.)  The Trustee does not argue that Surgent participated in any other transfers, nor does he point to any evidence that Surgent did. As there is no dispute as to any material fact, Surgent is entitled to judgment as a matter of law: as to the early transfers, the April 21, 1999 transfers, and the Fatcar transaction, Surgent's motion for partial summary judgment on Counts One, Three, and Five will be granted.

As to the LNP and Brewster transactions, both Surgent and the Trustee have moved for partial summary judgment on Counts One, Three and Five. There is no dispute that Surgent helped incorporate LNP, and that he served as TD's attorney in the LNP and Brewster transactions. (Surgent May 19, 2003 Cert. ¶¶ 44-47, Scarpone Cert. Tab. C.) There is also no dispute that TD raised with Surgent the idea of shielding his assets from creditors. The parties dispute, however, facts concerning Surgent's state of mind as to the LNP and Brewster transactions. The Trustee points to various pieces of evidence, most notably Surgent's admission that he knew of TD's plan to form LNP to "'park' the rights acquired from Sun NLF," (Surgent May 19, 2003 Cert. ¶ 61, Scarpone Cert. Tab. C), as well as evidence alleged to constitute

"badges of fraud," circumstances that give rise to an inference of fraudulent intent. (Trustee's MSJ Br. 21-32.)  Surgent offers his own certification as well as the certification of employee Pamela Wilchek in support of his assertion that he told TD clearly that he must not engage in the illegal hiding of assets. (Surgent November 20, 2006 Cert. ¶¶ 11-13; Wilchek Cert. ¶¶ 24-28.)

A reasonable jury could hear the evidence and decide in favor of either Surgent or the Trustee.  While the Trustee contends that Surgent's statement that LNP was formed to "park" certain rights is an admission that he had the necessary intent to hinder or delay creditors, the Trustee's reading is a matter of interpretation and is not so obvious that a reasonable jury could only agree.  There are thus material factual disputes as to the mental state elements of § 25:2-25 which preclude a grant of partial summary judgment to either the Trustee or Surgent.  Such issues of intent are rarely amenable to resolution on summary judgment. Louis Schelsinger Co. v. Kresge Foundation, 388 F.2d 208, 212 (3d Cir. 1968).  As to the LNP transaction and the Brewster transaction, this Court is satisfied that material factual disputes exist as to Counts One, Three, and Five.  Scarpone's motion for partial summary judgment, as to Counts One, Three, and Five, will be denied.  The Trustee's motion for partial summary judgment, as to Counts One, Three, and Five, will be denied in part.

Surgent also argues that, under the UFTA, the Trustee has no remedy against Surgent, because remedies are limited to avoiding fraudulent transfers and to actions against transferees. The plain language of the provision Surgent cites in support, N.J. Stat. Ann. § 25:2-29, contradicts this assertion: "In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in R.S. 25:2-30, may obtain: . . . (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure . . . (c) Any other

relief the circumstances may require." The statute does not limit the remedies available as Surgent contends. Furthermore, as the Trustee observes, if the UFTA allowed actions only against transferees, this would conflict with the New Jersey Supreme Court's holding in <u>Banco Popular</u>, finding liability under the statute for those who assist in fraudulent transfers.

Surgent argues as well that he is protected against liability by New Jersey's litigation privilege. The New Jersey Supreme Court has set forth the principles of the litigation privilege as follows:

> The absolute privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. Whether a defendant is entitled to the privilege is a question of law.

<u>Hawkins v. Harris</u>, 141 N.J. 207, 216 (N.J. 1995) (citation omitted). The Trustee argues persuasively that Surgent's communications with TD about illegally hiding assets were not made in furtherance of litigation. Moreover, the litigation privilege covers only communications; it does not protect Surgent from liability for his acts. This Court is not persuaded that New Jersey's litigation privilege entitles Surgent to judgment as a matter of law.

    B.    <u>The negligence claims: Count Six</u>

Both Surgent and the Trustee have moved for partial summary judgment on Count Six, the claim against Surgent for negligent legal representation. The parties do not dispute that, under New Jersey law, "the usual principles of negligence apply to legal malpractice. The requisite elements of a cause of action for legal malpractice are: (1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." <u>Conklin v. Hannoch Weisman</u>, 145 N.J. 395, 416 (N.J. 1996)

(quotation omitted).

As a threshold matter, Surgent argues at a number of points that, even if he had committed an ethical violation in his representation of TD, under New Jersey law, this would not give various third parties a cause of action. Despite the fact that the Trustee's motion expressly argues a third-party claim,[1] in his opposition to Surgent's motion, the Trustee stated that he makes no claim that Surgent breached a duty to third parties, and that Count Six "is based strictly on Surgent's negligent breach of duty to his client, Thomas Dionisio, and the resulting harm to Thomas Dionisio." (Trustee's Opp. to Surgent's MSJ Br. 26.) This Court finds that the Trustee has abandoned any claim of negligence based on a third-party theory. Thus, Count Six is based solely on the legal theory that, pursuant to 11 U.S.C. § 323(a) and 11 U.S.C. § 541(a)(1), the Trustee stands in the shoes of the debtor.

Count Six alleges broadly that "Surgent was negligent in his legal representation of the Debtor with regard to the transfer of assets to Laura Dionisio and/or Laura Nelson Properties." (Third Am. Compl. ¶ 155.) In the briefs, the parties focus on the LNP transaction. It is undisputed that Surgent represented both TD and LNP in the LNP transaction. The Trustee contends that Surgent failed to properly warn TD of the risk involved in transferring assets to a corporation controlled by his wife, but offers no evidence that supports this. Surgent offers his certification that he informed TD and LD of the potential conflict of interest arising from the dual representation of TD and LNP, and they elected to proceed. (Surgent November 20, 2006 Cert. ¶¶ 176-177.) Surgent also certifies that he warned TD about the risks involved in transferring the foreclosure judgment to LNP and giving up all legal control of the asset, and that TD "insisted

---

[1] See Trustee's MSJ Br. 27.

that he understood the risk, he was discounting it, and he was willing to run with it." (Surgent November 20, 2006 Cert. ¶¶ 205-206.) The Trustee has offered no evidence that shows a factual dispute over Surgent's advice to TD.

In support of his case, the Trustee offers Surgent's May 19, 2003 certification. The section the Trustee points to, however, cannot be reasonably read as evidence that Surgent failed to warn TD. Surgent states that, after TD proposed that the Secluded Acres mortgage be transferred to a corporation to be incorporated by LD, "I saw no conflict in this approach, because at this time (on or about June 3, 1999), the Debtor and his wife had a good relationship." (Scarpone Cert. Tab. C ¶ 14.) This is not a statement about what Surgent did or did not do in advising his clients. It is not an admission that he did not counsel TD about the risks. Rather, it is a simple assertion about what he believed at that point in time: given the appearance of marital harmony, the interests of TD and LD did not appear to be in actual conflict. No reasonable jury could conclude from this evidence that Surgent gave or failed to give particular advice to TD.

In support of his case, the Trustee also relies on the report of Christopher Hartmann. Hartmann concludes that Surgent was negligent in his representation of TD in the LNP transaction. (Zimmerman Cert. Tab 1 at 32.) Hartmann candidly admits, however, that he is relying on factual assumptions, including the representation that Surgent failed to warn TD of the risks in the transaction. (See, e.g., Zimmerman Cert. Tab. 1 at 9: "Surgent *apparently* failed to provide the debtor with any meaningful advice . . ." (emphasis added).) The Hartmann report does not constitute evidence that Surgent failed to warn TD of the risks. Hartmann claims no personal knowledge of any of the facts of the case. His report does not raise a factual dispute as to whether Surgent warned TD.

10

In the absence of any evidence that Surgent failed to warn TD, the only way the Trustee could prevail would be if New Jersey had a bright line rule that conflicted representation was per se negligent. New Jersey has no such rule, however. At the time of the LNP transaction, the applicable New Jersey Court Rule stated:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after a full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

RPC 1.7(b) (1998). This Rule expressly allows representation of multiple clients under certain circumstances, which include obtaining their informed consent. Because the Trustee bears the burden of proof of the elements of negligence at trial, in the absence of evidence that Surgent did not obtain informed consent, the Trustee cannot show a violation of RPC 1.7(b).

As the moving party bearing the burden of proof, the Trustee has failed to show that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." Bressman, 327 F.3d at 238. As to the Trustee's motion for partial summary judgment on Count Six, the Trustee has not demonstrated that he is entitled to judgment as a matter of law, and the Trustee's motion will be denied. As to Surgent's motion for partial summary judgment on Count Six, Surgent does not have the burden of proof at trial, and he met his initial summary judgment burden by pointing to the absence of evidence to support an essential element of the nonmovant's case. In response, the Trustee has failed to offer

evidence supporting its case that shows a genuine factual issue for trial. As to Surgent's motion for partial summary judgment on Count Six, Surgent has demonstrated that he is entitled to judgment as a matter of law, and his motion will be granted.

  C. <u>The Trustee's motion as to Surgent's counterclaims</u>

The Trustee has also moved for partial summary judgment on Surgent's two counterclaims, which: 1) ask that his fees for legal services related to "Secluded Acres" be given priority for payment as an administrative expense; and 2) allege that the Trustee negligently permitted the Debtor's estate to lose the benefit of the Master Lease asset.

As to the first counterclaim, the Trustee argues that only post-petition administrative expenses may qualify as priority administrative claims under 11 U.S.C. § 503(b)(1)(A), and that the fees at issue relate to pre-petition services. Surgent made no response in opposition. There is thus no evidence that Surgent's fees for legal services relating to "Secluded Acres" are for post-petition services that are eligible for priority payment under the Bankruptcy code. The Trustee's motion for partial summary judgment on the first counterclaim will be granted.

As to the second counterclaim, the Trustee contends, in brief, that the events that caused the loss of the Master Lease occurred prior to his appointment as Trustee and thus could not be due to his negligence, but rather were due to that of Ernest Nuzzo. Although the two documents that the Trustee offers do not prove his position, it is Surgent who bears the burden of proof of his counterclaim. As the moving party, the Trustee need only point out the absence of evidence to support the nonmovant's case. The burden then shifts to Surgent to show sufficient evidence for a jury to find in his favor at trial. Surgent's vague one-page opposition, however, does not even begin to carry this burden, and he has failed to defeat the Trustee's motion for partial

summary judgment. The Trustee's motion for partial summary judgment on the second counterclaim will be granted.

        D.      <u>Surgent's motion as to punitive damages</u>

Surgent also moves for partial summary judgment, asking this Court to rule that the Trustee cannot recover punitive damages because the Trustee never took discovery as to Surgent's assets. Surgent relies on an unpersuasive interpretation of the statutory text of N.J.S.A. 2A:15-5.12(c), which instructs the trier of fact, when determining punitive damages, to consider, inter alia, the financial condition of the defendant. This meritless argument does not need extensive discussion, and this Court will simply note that any absence of discovery of Surgent's assets need not mean that the Trustee has no evidence of Surgent's financial condition; Surgent is, after all, an attorney. Furthermore, in the absence of any case law from New Jersey courts supporting Surgent's proposed statutory interpretation, this Court declines to construe N.J.S.A. 2A:15-5.12(c) to bar punitive damage awards when discovery of a defendant's assets has not been taken. As to the issue of the award of punitive damages, Surgent's motion for partial summary judgment will be denied.

        E.      <u>The cross-motion to strike</u>

In response to Surgent's motion for partial summary judgment, the Trustee cross-moved to strike Surgent's motion and impose sanctions. The Trustee argues that Surgent's motion is frivolous. In light of the fact that this Court has granted Surgent's motion in part, it does not agree that the motion is frivolous. The Trustee's cross-motion to strike Surgent's motion and to impose sanctions will be denied.

**CONCLUSION**

For the reasons stated above, Surgent's and the Trustee's motions for partial summary judgment are **GRANTED IN PART** and **DENIED IN PART**. The Trustee's motions for partial summary judgment on Counts One, Three, Five, and Six are **DENIED**. The Trustee's motion for partial summary judgment on Surgent's counterclaims is **GRANTED**. Surgent's motion for partial summary judgment on Count Six is **GRANTED**. As to the early transfers, the April 21, 1999 transfers, and the Fatcar transaction, Surgent's motion for partial summary judgment on Counts One, Three, and Five is **GRANTED**. As to the LNP transaction and the Brewster transaction, Surgent's motion for partial summary judgment on Counts One, Three, and Five is **DENIED**. Surgent's motion for partial summary judgment on punitive damages is **DENIED**. The Trustee's cross-motion to strike Surgent's motion and to impose sanctions is **DENIED**.

        s/ Stanley R. Chesler
        Stanley R. Chesler, U.S.D.J.

Dated: March 20, 2007